## Leonard Grover v. William D. Fox and Charles D. Holmes.

*Mortgages: Power of sale: Statutory requisites: Mistake: Good faith.* In executing the power of sale in a mortgage the statutory proceeding must comply substantially with all the conditions set by the legislature, and those who conduct the foreclosure must observe good faith, and pay a proper regard to the interests of all who may be affected by the proceedings; and no defect or misstep in matters of substance will be cured or excused by any proof that it happened by mistake, and was not induced by a bad purpose.

*Mortgages: Statutory foreclosures: Illegalities: Giving time to redeem.* An offer to the mortgagor to give him time within which to redeem from foreclosure sale the whole or part of the premises, cannot avail to correct illegalities, or to preclude the mortgagor from taking advantage of them and demanding to redeem as matter of right; and the limit of time proposed for redemption in this case, being but ten days, was inequitable.

*Contiguous parcels occupied as one farm: Sales in parcels.* The query is suggested, whether where premises are composed of contiguous parcels occupied together as a single farm, a sale in parcels is essential to a valid foreclosure.

*Statutory foreclosures: Sale in parcels.* The sale having been made in parcels, however, if incapable of being sustained as a sale in parcels, it cannot stand as a valid sale in bulk; the sale must be contemplated as it was, rather than as it was not.

*Statutory foreclosures: Deeds: Sale: Parcels.* A deed which represents the sale as one made in bulk for a single bid, is not a proper one where the sale was in fact in separate parcels and for several bids.

*Foreclosure deed: Acknowledgment: Statute construed.* Though the statute makes no express requirement that the deed executed and delivered on foreclosure sale shall be acknowledged, or have appended a certificate of acknowledgment, yet in view of the fact that the statute contemplates that the deed when placed on file shall be complete and in a condition to be recorded, in case redemption is not made, and considering the established practice in that regard, it is deemed essential.

*Foreclosure deed: Ante-dated: False certificate of acknowledgment.* A deed

executed and put on file ten months after the sale and falsely ante-dated and acknowledged as of the day of the sale, is not a valid foreclosure deed.

·*Statutory foreclosures: Two separate deeds: Inconsistent deeds: Ambiguity: Files.* Where on a foreclosure sale made in parcels a deed is made and filed in proper time, but which misrepresents the sale as one made in bulk and for a single bid, and thereupon, after ten months, a new deed is executed, properly representing the sale as one made in parcels, but which is antedated and purports to have been acknowledged on the day of the sale, and this, too, is put on file, the proceedings thereby become so duplicated and ambiguous as to be void.   Parties are entitled to have the papers on file of themselves identify the sale and convey distinct information, without the aid of extrinsic inquiries, as to the time and manner of the sale and the price or prices bid.

·*Sale in parcels: Sufficient sold to satisfy mortgage: Further sale void.* Where a foreclosure sale is made in parcels, when enough parcels have been sold to satisfy the mortgage debt and all costs and expenses, the power of sale is exhausted, and affords no authority to make further sales of the remaining parcels.

·*Irregular statutory foreclosure: Bill to redeem: Decree: Void sale: Sale under decree.* On a bill to redeem from an irregular foreclosure, the foreclosure proceedings being found invalid, the decree should provide for redemption from the mortgage as an unforeclosed security, and not from the void sale; and in determining the amount to be paid on such a redemption, it is erroneous to make a rest in computing interest at the date of the sale; and the decree should provide for a sale as on foreclosure to produce satisfaction, in the event of failure to redeem.

·*Heard April 6.      Decided June 6.*

Appeal in Chancery from Calhoun Circuit.

*Brown & Patterson,* for complainant.

*T. G. Pray,* for defendants.

GRAVES, J:

This cause was heard at the same time as the case of *Grover v. Fox & Richfield, supra, p. 453,* and it is a branch of the same general controversy to which that case belongs.

It will not be necessary to repeat the facts given in the other suit.

The present bill was filed by Grover for relief against proceedings to foreclose the Parker mortgage, mentioned in the other case, by advertisement, and Holmes was joined as defendant on account of his connection as register of deeds with the proceedings.   After hearing on pleadings and proofs,

the circuit court allowed Grover opportunity to redeem on certain specified terms, and both parties appealed.

It will be remembered that the mortgage was given by Powell Grover and Elizabeth Grover, his wife, to Alvin E. Parker, October 19th, 1867, on the Grover farm in Homer, in the county of Calhoun, containing four hundred and forty acres, to secure payment of six thousand dollars of principal, in five years from October 3, 1867, with interest at ten per cent., payable semi-annually.

The mortgage further provided for the payment of an attorney's fee of seventy-five dollars in case of foreclosure, and also that interest not paid when due should become principal and draw interest at the rate previously prescribed until paid.

The farm consists of nine distinct parcels of land. The mortgage contains ten descriptions, but the last only covers the eighth and ninth, and gives no additional quantity.

As appears in the other case, complainant acquired an interest entitling him to redeem prior to the bill.

In January, 1870, the defendant Fox, together with John P. Houck and Isaac L. Ostrom, acquired the mortgage, and June 12, 1873, gave notice of foreclosure and sale pursuant to the power of sale and the regulations of the statute. The present solicitor and counsel of Fox acted as their attorney in the statutory foreclosure. The sale was postponed from time to time until the 9th day of January, 1874, and on that day the whole premises were sold to Fox for the aggregate sum of ten thousand four hundred dollars.

The defense maintains, and the claim is sustained by the evidence in the record, that in fact Fox and his co-owners of the mortgage treated the premises at the sale as comprised of nine separate and distinct parcels salable separately, and that they actually sold each of such pieces by itself and for a distinct price, and that the several parcels brought the following sums: One brought sixteen hundred dollars, one two thousand dollars, one eight hundred dollars,

one thirty-two hundred dollars, one sixteen hundred dollars, one six hundred dollars and three others two hundred dollars each.

The only matter in the record indicating the order of sale gives it as here stated.

When the sale was finished, the attorney for Fox, Houck & Ostrom, prepared the deed they desired the sheriff to execute to Fox, and which should be placed on file in the office of the register of deeds. But this deed imported that the whole premises had been sold in one parcel to Fox, and for the sum of ten thousand four hundred dollars, and contained no indication that the farm had been sold in distinct tracts or pieces and for specific sums.

The sheriff executed and acknowledged the deed as of January 9, 1874, and on the same day he made affidavit of the sale, and therein represented it as a sale of the whole farm as one parcel and for one sum.

On the same day, also, an affidavit by the printer was made, showing what publication of notice had been given, and on the 10th or 11th of January, 1874, these papers, with the sheriff's certificate on the deed, showing when it would be absolute, were filed in the office of the register of deeds.

For nearly ten months, and until the 6th of November, 1874, no other papers were filed. At that time, however, the attorney for Fox prepared a new deed, describing the sale according to the fact and showing that the premises were sold in parcels, and stating the order as hereinbefore given. In other respects this deed was like the first. It was antedated to January 9, 1874, and signed by the sheriff, and his acknowledgment of execution was certified as of January 9, 1874. A new affidavit of sale by the sheriff, and also a new affidavit of publication by the printer, were made, but the jurats were antedated to January 9, 1874. This new deed, with its erroneous date and antedated certificate of acknowledgment, and antedated certificate of the

time when the deed would become absolute, together with the irregular affidavits, were caused by Fox to be filed in the register's office, November 6, 1874.

The first papers were not removed or changed. They were suffered to remain in the place they had previously occupied, and being the place devoted to regular papers of that class, no warning or explanation was put on file to show that these papers were irregular or not confided in, or that they were considered as superseded. They stood with the same apparent significance they had borne from the beginning. Having the purpose to redeem the whole or at least a part of the farm, complainant called repeatedly and examined the papers before the second set were filed. He also called subsequently with the same object, but neither discovered nor was shown any of the new papers. Finally, and on the evening of January 8, 1875, being the last day for making redemption, he, together with his attorney and two others, waited at the register's office to effect, if practicable, a redemption of the homestead, and possibly of another parcel.

His business was made known to the register to whom he tendered money enough, as turns out, to redeem the two parcels.

The register examined the first deed, and finding that it contained no basis for the redemption of part, refused the tender, and refused to recognize any right to redeem less than the whole. He gave no intimation that the first deed had been superseded, or that a second set of papers had been placed on file.

He must have forgotten the filing of the new instruments, and been misled by seeing the others where the papers in the case belonged. In other words, the placing of two sets of papers on the files, where the law contemplated but one, caused him to act upon the first set, and as though it was the only set on file. Neither complainant nor his attorney had any knowledge or notice of the existence of the second set of papers.

36 MICH.—59.

GROVER v. FOX.

January 11, 1875, the attorney for Fox called upon the register and desired him to record the second deed. At the same time he took and carried away the first deed, against the register's objections. That deed has been practically repudiated and cancelled by Fox, and is admitted to be a nullity.

Immediately succeeding the request made to him to record the second deed, the register notified its existence to complainant's attorney.

On one or two occasions after the expiration of the year, Fox, speaking through his attorney, informed complainant he could have ten days to redeem the whole or part of the premises. This could not avail to correct illegalities or to preclude complainant from taking advantage of them and demanding to redeem as matter of right. If the right existed, it was not competent for Fox to impose conditions. The terms would depend upon the requirements of equity, and the limit of ten days was not equitable or based on any legal authority.

We come then to the general question, was the mortgage foreclosed and the right of redemption cut off by the steps taken therefor.

It is well settled that in executing the power of sale in a mortgage the statutory proceedings must comply substantially at least with all the conditions set by the legislature, and those who conduct the foreclosure must observe good faith and pay a proper regard to the interests of all who may be affected by the proceedings, and no defect or misstep in matters of substance will be cured or excused by any proof that it happened by mistake and was not induced by a bad purpose.—*Lee v. Mason, 10 Mich., 403; Doyle v. Howard, 16 Mich., 261; Sandford v. Flint, 24 Mich., 26; Dodge v. Brewer, 31 Mich., 227; Udel v. Kahn, Id., 195; Montague v. Dawes, 14 Allen, 369; Roche v. Farnsworth, 106 Mass., 509; Byers v. Surget, 19 How., 303.*

Fox and his co-owners of the mortgage sold and he bought in parcels, and complainant regarded a sale in that

way as lawful, and both parties have assumed in argument, that although the premises were composed of contiguous parcels and made one farm and were occupied as one parcel, still a sale in parcels was essential to a valid foreclosure. Not being required to pass upon that question, no opinion is given on it.

In the circumstances of this case, it is sufficient that in fact the farm was disposed of in parcels.

The sale must be contemplated as it was, rather than as it was not. If incapable of being sustained as a sale in parcels it cannot stand as a sale in bulk; because all are agreed that there was no such sale as that.

Without dwelling on others, there are three grounds of objection to the proceedings which may be noticed: *first*, in *Doyle v. Howard, ubi supra,* this court held that unless the proper deed was filed within a suitable time, and certainly within the year, the sale would be void. All admit that the first deed was not a proper one. If it be conceded that the filing of the second about two months only before the expiration of the year was in a suitable time, was the deed itsef in compliance with law? The statute contemplates that the deed when placed on file is finished and in a shape to be recorded in case redemption is not made, and although no acknowledgment of execution is in terms required by the chapter regulating foreclosures, still the profession have always considered that the general statute applied and rendered it necessary that the execution should be regularly authenticated to complete the deed for record. So universal has been the opinion, that there has never been any deviation in practice. Even in this very case the necessity was recognized.

The deed relied on bore the form of a certificate of acknowledgment pursuant to § *4210, C. L.,* which requires the "*true date*" to be expressed. The certificate was false, however. It imported an acknowledgment of execution taken nearly ten months before the deed was in fact made. This was designed, and was not only known to Fox as the

party foreclosing and purchasing, but was in reality the act of his attorney. Admitting that no wrong was intended, it was still not a lawful proceeding. There is strong reason for the opinion that in consequence of this the deed was not such a deed as the law requires, and that Fox's connection with the illegality disentitled him from demanding that the deed should stand and be recorded. Assuming this to be so, then no proper deed was filed within the year.

*Second,* The first deed is admitted to have been invalid. It was deposited where it would have rightly belonged if it had been valid, and accordingly in the exact place where those interested in ascertaining were to look for any deed made on the foreclosure of the mortgage. It was allowed to remain there until the year for redeeming had expired. These proceedings were dictated by Fox through his attorney, and he was responsible for them. However blameless in intention, the course so pursued caused the files to grossly misrepresent the sale, and to hold out false colors to the public and mislead complainant.

The first deed, and no other, being found soon after the sale, in the place set apart for foreclosure deeds, and having been repeatedly seen in the same place, and unaccompanied by any other for nearly ten months, complainant had no reason thereafter, upon finding the first deed as usual, to suppose that there would be found by further search the second and different deed which Fox's attorney caused to be placed on file on the 6th of November.

The perception of the old deed under the circumstances must naturally have put an end to search. The law provided for only one deed, and the first one presenting itself, as it did, implied that there was no other, and Fox is not entitled to hold complainant against the fact to a knowledge of the second deed from its having been placed in the files which held the other. Complainant did not discover it, and had no notice in fact of its existence, and the course taken in the proceedings, and for which Fox is responsible

naturally and plainly served to veil the second deed from complainant and to defeat the leading purpose of the law in requiring such deeds to be filed, and so completely was the intent of the regulation defrauded, that even the register, who had certified the filing of the second deed, was himself entirely misled when called on in the evening of January 8th to attend to a redemption of part of the premises.

These unauthorized and improper proceedings were deceptive and inequitable and not a fair and just execution of the power of sale, and considering the actual positions and attitudes of Fox and complainant, Fox's situation as claimant under the proceedings was no better as against complainant than it would have been if no deed at all had been filed within the year.

But suppose the fact had been different, and complainant, instead of being led to believe that the first deed was the only one filed, had actually discovered the second deed in the files also; he was legally entitled to have the *files* inform him distinctly and without ambiguity about the sale, and whether the land had or had not been sold in parcels, and in regard to the price or prices, and was also entitled to have the *files identify* the very deed to be wholly or in part canceled in case of redemption, and to be recorded as a conveyance if not canceled by redemption. The law required this, and did not contemplate extrinsic inquiries to settle such matters. It was intended that the *files* should make known these important facts. Now here were two deeds made to carry out the same foreclosure, and alike on their faces in every particular except as to the manner of sale, one denoting that the farm was sold in one parcel and for one sum, and the other that it was sold in nine parcels with a specific price for each parcel, and the files contained no sign or hint to show which of these deeds must be rejected and which acted upon.

Here, again, the proceedings were confused, ambiguous and irregular.

*Third,* The notice of sale, dated June 12, 1873, claimed

GROVER v. FOX.

that there was due at that time, for principal and interest alone, the sum of nine thousand four hundred and sixty-three dollars and ten cents. If to this be added the interest to the time of sale, on January 9, 1874, together with all the costs and expenses charged, the aggregate is found to be considerably less than ten thousand four hundred dollars, at which the premises are admitted to have been sold, and yet there is no intimation or pretense that Fox paid any thing beyond the mortgage debt and the costs and expenses. Indeed, the case implies that he did not, and that the debt, costs and expenses were treated as an equivalent.

It is next observable that according to the agreed computation found in the record, and of which Fox does not complain, the whole sum required to satisfy the mortgage and pay all costs and expenses at the time of sale was in fact but nine thousand three hundred and fourteen dollars and eighty-eight cents, and much less than was claimed some seven months earlier in the notice of sale for the bare principal and interest, and yet during that seven months interest accumulated on the principal sum at the rate of ten per cent.

Whether this sum of nine thousand three hundred and fourteen dollars and eighty-eight cents should not be regarded as excessive, is not material for the present purpose. It is sufficient that Fox does not complain that it is too small.

Now we have seen that nine parcels were separately sold, and that the sales aggregated ten thousand four hundred dollars and exceeded by one thousand and eighty-five dollars and twelve cents the required amount as shown by the agreed computation, and likewise considerably exceeded the required amount if the sum claimed in the notice of sale is taken as a basis.

And it is further seen that *prima facie* too much was sold by three parcels at least if the sum found by the computation is taken as the true one, and too much *prima facie* by one parcel at least even if the claim in the notice is taken as correct. The conclusion is unavoidable that grave

error was committed on this side of the proceeding, and that the power of sale was unlawfully executed in respect to the number of parcels sold. When enough had been sold to satisfy the mortgage debt and all costs and expenses, the power was exhausted, and the holders of the mortgage were without authority to make sale of more parcels. The statute recognizes this natural and plain limit, and in order to guard against abuse, expressly forbids the sale of more parcels, tracts or lots than shall be necessary to satisfy the amount due at the date of the notice of sale, with interest and the costs and expenses allowed by law.—§ *6918, C. L.*

On the whole, it is quite evident that the statutory foreclosure cannot stand in the way of adequate relief to complainant.

The only material question which remains concerns the form the relief ought to take, and a few words will dispose of it.

The decree below was grounded on the theory of allowing redemption from the sale under the proceedings to foreclose, instead of allowing it against the mortgage as an unforeclosed security; and in ascertaining the amount to be paid on redemption, a rest was accordingly made in computing interest at the date of the sale.

Complainant's counsel has made this the basis of an argument against compound interest, which he urged the court had allowed on the strength of the provision in the mortgage for the payment of interest on overdue installments of interest. The argument was scarcely warranted by the decree, which did not contemplate the compounding of interest in any accurate sense, and certainly there is no occasion for discussing the subject. The defense sets up no claim for compound interest, and no scheme of relief suggests itself as proper which would involve the allowance of it.

The principle of allowing redemption from the sale does not appear sound, and a departure from it will obviate certain objections made by complainant at the hearing, and render a special reference to them unnecessary.

The proceedings to foreclose have been found irregular, insufficient and inequitable, and not of force to bar redemption against the mortgage and to require the complainant to seek redemption from the sale, and hence the premises should be held redeemable from the mortgage as an unforeclosed security, and not from the invalid sale.

And under the circumstances, the general scheme of the decree ought to be the same a  in *Fosdick v. Van Husan, 21 Mich., 567.*

There the irregular proceedings at law were set aside and not allowed to stand and mystify the title, and redemption was authorized against the mortgage, and it was provided that in the event of failure to redeem, a sale as on foreclosure should be had to produce satisfaction.

The result is, that the decree below should be reversed, and a new decree entered, setting aside the proceedings to foreclose under the power of sale, and authorizing complainant within some reasonable time to redeem the premises from the mortgage on payment to defendant Fox, or his solicitor, or to the register of the court below, the proper amount therefor, and providing, on the other hand, for a sale of the premises as a foreclosure in equity, in case of complainant's failure to redeem within the time allowed therefor.

There appears to be no objection to Fox's claim on account of taxes which he paid and which are specified in the computation made under stipulation, and hence they should be allowed, with interest at seven per cent.

The interest at the rate of ten per cent. on the mortgage should be brought down from October 3, 1867, to the date of the decree, and except six hundred dollars paid, should be added to the principal.    The interest at seven per cent. on the sums paid for taxes should also be brought down from the several times of payment to the date of the decree, and added to the sums paid for taxes; and on the sum made up of principal and interest on the mortgage, interest should be allowed at the rate of ten per cent. from the date of the decree to the redemption or sale, as the case may be, and on the sum made up of taxes and interest thereon, interest

should be allowed at seven per cent. from the date of the decree to redemption or sale. The addition, at the time of redemption, of the two principals and the accrued interest, will give the sum required for redemption. Complainant should recover costs of both courts.

The other Justices concurred.